# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| LOCAL 473, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA, A. F. OF L., CIO and WILLIAM C. TRESHER, | : : : : : : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| RAYONIER INC., | : | |
| Defendant. | : | NO. CV204-077 |

## ORDER

Plaintiffs, Local 473, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO ("Local 473" or the "Union"), and William C. Tresher, filed the above-captioned case against Rayonier Inc., asserting claims for breach of a collective bargaining agreement ("CBA"), and improper denial of employee

welfare benefits, in violation of federal labor and pension law.

Presently before the Court are Defendant's motion for summary judgment and Plaintiffs' cross-motion for partial summary judgment on Counts II and III of the complaint. Because no material facts are in dispute, Rayonier's motion will be **GRANTED** in part, and **DENIED** in part, and the Union's motion will be **GRANTED** in part. Rayonier's motion will be **GRANTED** on Count I, and Local 473's motion will be **GRANTED** Count II. Rayonier's motion will be **DENIED** on Count II. The Court will **COMPEL** arbitration of Tresher's claim that he was denied disability benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), and the action will be **STAYED** pending the results of arbitration. Consequently, the parties' cross-motions for summary judgment on Count III will be **DISMISSED** as moot.

## BACKGROUND

Rayonier operates a mill in Jesup, Georgia, that manufactures highly purified chemical cellulose, fluff, and specialty pulps. Rayonier and Local 473, a trade union representing multicraft mechanics at the mill, entered into a

2

AO 72A
(Rev. 8/82)

CBA, which governed the parties' relationship during the time period relevant to this dispute. The CBA provides for a dispute resolution process that culminates in arbitration:

> Should a dispute arise it will be handled in the following manner. . . . [After exhausting internal remedies] the matter may, unless extended by mutual agreement, be referred to arbitration provided such reference is made within thirty (30) days from the receipt of the 3rd Step answer.

Doc. No. 19, Ex. 18 at 3-4.

The CBA contains a retirement provision for disabled employees, entitling such workers to receive a certain percentage of retirement benefits if they have at least ten years of service with the Company. Employees with at least fifteen years of service are entitled to a full benefit award. Doc. No. 19, Ex. 18 at 31. Further, the CBA provides that "any employee who retires on or after the date of ratification on a disability retirement shall have provided at company expense his group life insurance in force at the time of retirement." Doc. No. 19, Ex. 18 at 32.

Rayonier avers that eligibility for disability benefits was not a subject of bargaining between the parties, but was dictated by the Company in a defined benefit pension plan, known as the "Employees Retirement Income Plan for Rayonier Incorporated Bargaining Unit Employees at the Jesup Mill" (the

3

"Plan").¹ Doc. No. 19, Ex. 5. The Plan is subject to ERISA, the federal statutory scheme enacted to protect workers' pension plan rights, codified at 29 U.S.C. §§ 1001-1461. See 29 U.S.C.A. § 1001 (1999); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114 (1989). Rayonier argues that eligibility for benefits is controlled by the Plan, and that the Union is not entitled to arbitrate employees' entitlement to disability benefits under the CBA dispute resolution process.

The Plan states that:

> A Participant shall be deemed to be totally and permanently disabled if (1) through some unintentional cause, he has been totally disabled by bodily injury or disease or by mental derangement so as to be prevented thereby from engaging in any regular occupation or employment for remuneration or profit, and (2) such total disability is expected to be permanent and continuous during the remainder of his life, provided such disability is not incurred in service in the armed forces of any country, each as determined by the Company on the basis of qualified medical evidence.

Doc. No. 19, Ex. 5 at 6.

The Plan, like the CBA, applies to all Local 473 employees at the mill, including Tresher. Pension and employee welfare

---

¹ Plaintiffs maintain that Rayonier has a consistent past practice of negotiating the terms of the Plan with the Union.

4

benefits[2] are paid from the Plan's funds, which are held in trust.

The Plan is administered by a Retirement Committee appointed by Rayonier. Under the terms of the Plan, the Retirement Committee has "full discretionary authority . . . to make factual determinations regarding any and all matters arising []under [the Plan], including . . . the right to determine eligibility for benefits. . . ." Doc. No. 19, Ex. 5 at 48. The Plan states that the Retirement Committee's eligibility determination is final, save review by a state or federal court pursuant to ERISA. Doc. No. 19, Ex. 5 at 48.

On March 12, 1973, Tresher began working at the mill as a member of the yard crew, and later worked as a Rayonier mail carrier. After a few years, Tresher was accepted into the pipefitters' apprenticeship program, and became a member of Local 473. After completing his apprenticeship, Tresher worked as a pipefitter at Rayonier, and later became a multicraft

---

[2] Technically, under ERISA, a "pension plan" is a form of delayed compensation, 29 U.S.C.A. § 1002(2)(A) (1999), while an "employee welfare benefit plan" is "any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established . . . for the purpose of providing for its participants . . . medical . . . care . . . or benefits in the event of sickness, accident, disability, death or unemployment . . . [,]" 29 U.S.C.A. § 1002(1) (1999). However, for ease of reference, the Court will, at times, refer to "pension plan" not in the strict sense, but as encompassing both deferred compensation and employee welfare benefits.

5

mechanic at the mill. On November 22, 2000, declining health forced Tresher from his job.

Consistent with Company policy, Rayonier paid Tresher sickness and accident insurance compensation for the next nine months, until September 1, 2001. For the next six months, Rayonier classified Tresher as an employee on unpaid leave, and he retained his seniority and benefits. On March 1, 2002, Rayonier terminated Tresher because he could not perform the essential functions of his job.

Tresher had, and still has, a variety of medical ailments, ranging from fibromyalgia, to shoulder, neck, and joint pain, chronic fatigue syndrome, schizoaffective disorder, visual blackouts, hypertension, urinary outflow obstruction, and atrial fibrillation of the heart. According to Tresher, the medical condition that gives him the most difficulty is fibromyalgia, which causes pain in his hands and feet, and is exacerbated by physical activity.

On January 28, 2002, Tresher submitted an application for disability retirement benefits to the Retirement Committee. The Committee referred the application to Dr. Richard Lachiver for review. Based on a functional capacity evaluation that found that Tresher could be expected to perform the kind of

6

moderate activity associated with a light-duty job, Dr. Lachiver determined that Tresher was ineligible for disability benefits under the terms of the Plan. On July 19, 2002, Rayonier informed Tresher that his request for disability retirement benefits was denied.

On August 27, 2002, the Social Security Administration notified Tresher that he qualified for Social Security disability benefits. Tresher appealed Rayonier's determination, and informed the Company of the Social Security Administration's decision. Rayonier sent the appeal to Hartford Life and Accident Insurance Company to complete an independent evaluation, and Hartford contracted with Dr. Jason Mercer to review Tresher's medical records. On October 31, 2003, Dr. Mercer submitted a sixteen page report, concluding that Tresher was capable of performing a sedentary or light-duty occupation on a full-time basis.

On December 5, 2003, Rayonier informed Tresher that his appeal had been denied. Thereafter, Local 473 attempted to arbitrate Tresher's eligibility for disability benefits under the CBA, but Rayonier refused. Local 473 and Tresher then brought this action, alleging that Rayonier violated the CBA,

and that Rayonier wrongfully withheld Tresher's disability benefits.

Rayonier maintains that eligibility for disability benefits is controlled by the terms of the Plan, and that the Company has never used any other standard to determine employees' eligibility for disability benefits. To the contrary, Local 473 alleges that there are three other definitions that have been used to determine eligibility for disability benefits at the mill.[3] First, the Union asserts that Rayonier had a past practice of approving for benefits any individual who (1) can no longer perform his job at Rayonier, and (2) is qualified to receive Social Security disability benefits. Local 473 contends that Rayonier should have awarded Tresher benefits based on this past practice.

To illustrate what it maintains is the Company's inconsistent application of the pension and employee welfare benefit plan,[4] Local 473 submitted two other possible

---

[3] The Union denies that the Plan definition has been used to determine eligibility for disability benefits.

[4] "Plans" providing for pensions and welfare benefits for former workers need not carry a particular title, or be created solely by the employer, to be governed by ERISA. 29 U.S.C.A. § 1002(1) (1999). Disability benefit plans subject to ERISA may be found in pension and welfare benefit plans, like the Plan here, as well as in CBAs, and summary plan descriptions ("SPDs"). Stewart v. KHD Duetz of Am., Corp., 980 F.2d
(continued...)

8

definitions of "disabled" that have been applied at the mill. The first of those alternatives is found in a SPD that Rayonier distributed to employees to describe the terms of the Plan. In the SPD, Rayonier explained that employees were eligible for disability retirement benefits if:

> you can no longer work because of physical or mental disability and
> o   you have completed at least 10 years of benefit service,
> o   medical examination shows that the disability is total and likely to be permanent, and
> o   your disability was not a result of military service or self-inflicted injury.

Doc. No. 19, Ex. 7 at 13.

According to Berry Howell, current President of Local 473, the SPD determined eligibility for disability retirement benefits at Rayonier. Howell Decl., Doc. No. 30 at 16. Howell stated that during contract negotiations in 2001, Rayonier proposed a new standard to determine eligibility for disability benefits, which the Paper, Allied-Industrial, Chemical & Energy Workers International Union, Local 3-787 ("PACE") accepted, but Local 473 rejected. Howell Decl., Doc. No. 30 at 17.

---

[4](...continued)
698 (11th Cir. 1993); McKnight v. S. Life & Health Ins. Co., 758 F.2d 1566, 1569-71 (11th Cir. 1985)(reliance on SPD justified). Thus, the reference here to "pension and employee welfare benefit plan" means "those governing documents that are subject to ERISA," and is not necessarily limited to the Plan, but could include other documents.

The PACE definition is the other alternative definition of "disability" offered by Local 473 to show what it contends is Rayonier's inconsistent behavior in awarding disability benefits. In a "Side Agreement" between PACE and Rayonier, dated August 6, 2001, Rayonier and PACE agreed that:

> An employee/participant who is otherwise qualified for a disability pension under the terms of the labor agreement and pension plan shall be deemed to be totally and permanently disabled if (1) through some unintentional cause, he has been totally incapacitated, mentally or physically, from the further performance of duties at the Jesup Mill for which the employee is qualified based on education, experience, skills or intellectual capacity; (2) it is found that such incapacity is likely to be permanent; and (3) he is eligible for or in receipt of a disability benefit under the Social Security Act. . . .
>
> All decisions concerning the pension plan administration, which are governed by ERISA and other federal law, <u>are excluded from the grievance/arbitration provision of the labor agreement</u>.
>
> If there is a dispute between the company physician and the employee's physician as to numbers 1 and 2 above, the question shall be submitted to a third party physician/medical practitioner, mutually agreed by both parties for resolution.

PACE Side Agreement, Doc. No. 30 at 19 (emphasis added).

Rayonier could not reach a similar bargain with Local 473. Instead, a Company memorandum was incorporated into Local 473's CBA, which stated in part:

10

DISABILITY PENSION LANGUAGE

. . .

If an agreement is not reached, the existing disability language will remain in full force and effect for the duration of the contract extension. Your unions will then have the right to challenge the existing language and its interpretation under the terms of the grievance procedure, <u>including arbitration</u>.

CBA, Doc. No. 19, Ex. 18 at 24 (emphasis added).

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor. . . ", <u>United States v.</u>

Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

In Count I of the complaint, Plaintiffs contend that Rayonier breached the CBA by failing to pay disability benefits to the Union's disabled members in accordance with past practice, in violation of the Taft-Hartley Act, also known as the Labor Management Relations Act ("LMRA"). In the alternative, in Count II, Local 473 asserts that Rayonier breached the CBA by refusing to arbitrate employees' eligibility for disability benefits. In Count III, Tresher contends that Rayonier denied him benefits in violation of ERISA.

## II. EMPLOYEE WELFARE BENEFITS DISPUTE GOVERNED BY ERISA, EXTRINSIC EVIDENCE INADMISSIBLE WHERE PLAN OR CONTRACT CREATING RIGHT TO BENEFITS IS UNAMBIGUOUS

Local 473 contends that Rayonier breached the CBA by failing to recognize the determination of the Social Security Administration as conclusive of Plan eligibility when an employee was disabled from performing his job at the mill.[5] However, a significant body of authority demonstrates that (1)

---

[5] Plaintiffs do not allege that the parties memorialized this "past practice" in written form in the CBA, or elsewhere.

the parties' dispute over "which definition of disabled applies"[6] is a matter of whether the plan was administered properly under ERISA and (2) assuming, arguendo, that federal labor law did apply, Plaintiffs' proffered definition of "disabled" is inadmissible to contradict the clear definition contained in the governing plan document.

In a claim involving an asserted violation of a labor agreement, any right to lifetime benefits must originate from the contract. While federal law governs the analysis, courts employ traditional canons of construction to determine the parties' intent, based on the governing documents of the plan, whether found in a retirement plan, CBA, or SPD. Int'l Union, UAW v. Yard-Man, Inc., 716 F.2d 1476, 1479 (6th Cir. 1983). The Court looks first to the explicit language of the governing document(s) for clear manifestations of intent. If the plan documents are unambiguous, extrinsic evidence is not admissible to determine the plan's meaning. Id.

> ERISA requires that welfare benefit plans be governed by written plan documents which are to be prepared and filed in compliance with ERISA's reporting and disclosure requirements. The SPD is the statutorily established means of informing participants of the

---

[6]

To recapitulate, there is (1) Rayonier's choice, the Plan definition, (2) Local 473's candidate, the "past practice" definition, and (3) the Union's alternative, the SPD definition. No one has suggested that the "PACE" definition should apply to this dispute.

13

> terms of the plan and its benefits. . . .
> Accordingly, any retiree's right to lifetime medical
> benefits at a particular cost can only be found if it
> is established by contract under the terms of the
> ERISA-governed benefit plan document.

Alday v. Container Corp. of Am., 906 F.2d 660, 665 (11th Cir. 1990).

"[A]ltering a welfare plan on the basis of non-plan documents and communications, absent a particularized showing of conduct tantamount to fraud, would undermine ERISA." Moore v. Metro. Life Ins. Co., 856 F.2d 488, 489 (2d Cir. 1988). "Oral representations or promises cannot modify the clear terms of an employee benefit plan." Alday, 906 F.2d at 665; see also Sprague v. Gen. Motors Corp., 133 F.3d 388, 403 (6th Cir. 1998)(en banc).

The Union's reliance on ERISA's "savings clause," in support of their attempt to transform their "past practice" argument into an LMRA claim, is unavailing. While it is true that ERISA does not "supersede" other federal laws, 29 U.S.C. § 1144(d), matters of plan interpretation are governed by ERISA, not the LMRA.

Nor is Plaintiffs' case improved by the SPD definition. As an initial matter, the Court notes that "extrinsic evidence is not admissible to contradict the terms of an unambiguous

14

contract." Stewart, 980 F.2d at 701 n.1. Moreover, Tresher has not attempted to show reliance on a variance in the SPD that was both justifiable and detrimental. Branch v. G Bernd Co., 955 F.2d 1574, 1578-79 (11th Cir. 1992); Buce v. Allianz Life Ins. Co., 247 F.3d 1133, 1156-57 (11th Cir. 2001)(Barkett, concurring) (agreeing with obiter dictum of Branch, that <u>detrimental</u> reliance is required to "disregard a plan's otherwise controlling terms").

The Court concludes that Rayonier is entitled to summary judgment on Count I because the dispute over "which definition applies" to determine eligibility for disability benefits under the plan is a matter of ERISA law, and because the "past practice" definition would not be applicable, even if Local 473's claim was cognizable under the LMRA. The Court rejects the Union's argument that the Company's alleged "past practice" controls over the unambiguous Plan definition.

### III. RAYONIER BREACHED AGREEMENT TO ARBITRATE DISABILITY BENEFIT DISPUTES

Arbitration is a matter of contract, and a party can not be required to submit to arbitration if it has not agreed to forgo its right to proceed in court. United Steelworkers of Am. v. Warrior & Gulf Navigation, 363 U.S. 574, 582 (1960).

Yet, when there is an arbitration agreement, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Id. at 582-83.

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 567-68 (1960).

In support of its position that Tresher's eligibility for benefits is not covered by the arbitration agreement, Rayonier emphasizes that "disability" is defined in the Plan, and that the Plan gives the Retirement Committee the final word on

employee eligibility, subject to court review.[7] Doc. No. 19, Ex. 5 at 6, 48.

Yet there is unrebutted evidence that the parties bargained over the terms of the pension plan and the CBA together, and the parties' arbitration agreement clearly encompasses disputes over eligibility for disability retirement benefits. The Court cannot ignore the arbitration clauses in the CBA when it determines the arbitrability of a dispute. CBA, Doc. No. 19, Ex. 18 at 3-4, 24.

> The arbitrability of any dispute turns in the first instance on the arbitration clause of the contract. . . . If its arbitration clause is broad, then we must find that the parties bargained to have any dispute that arguably falls within the scope of that clause settled through arbitration, absent compelling proof to the contrary.

Sheet Metal Workers Local 57 Welfare Fund v. Tampa Sheet Metal Co., 786 F.2d 1459, 1460-61 (11th Cir. 1986)(quoting Ottley v. Sheepshead Nursing Home, 688 F.2d 883, 886 (2d Cir. 1982)).

---

[7] Rayonier argues that Local 473 lacks standing to assert this claim because only a "participant, beneficiary, or fiduciary" of a plan may maintain suit under ERISA. 29 U.S.C.A. § 1132(a)(3) (1999). However, Local 473 has standing to compel Rayonier's recognition of the collectively bargained arbitration agreement, pursuant to § 301 of the LMRA, 29 U.S.C. § 185(a)("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction. . . ."); see, e.g., United Paperworkers Int'l, Local # 395 v. ITT Rayonier, Inc., 931 F.2d 832, 833 (11th Cir. 1991).

17

As the Court has explained in a similar case, the general arbitration clause in force between Rayonier and Local 473 is broad, and there is no forceful evidence of any intent to exclude this kind of grievance from arbitration. PACE v. Rayonier Inc., Civ. A. No. 200-031, Doc. No. 31 at 10-12 (S.D. Ga. 2000)(compelling arbitration of dispute pertaining to eligibility for disability benefits).

Indeed, the instant set of facts presents an even stronger case for compelling arbitration than PACE did. Most significantly, the specific arbitration clause leaves no room for doubt regarding the parties' intent: "Your unions will then have the right to challenge the existing [disability benefit] language and its interpretation under the terms of the grievance procedure, including arbitration." CBA, Doc. No. 19, Ex. 18 at 24.

This clause is sufficient to distinguish the authorities on which that Rayonier relies to avoid arbitration of the dispute, including Printing Specialties and Paper Products Union Local 680, Graphic Communication International Union, AFL-CIO v. Nabisco Brands, Inc., 833 F.2d 102, 104-05 (7th Cir. 1987)(finding "a wealth of forceful evidence" to exclude the claim from arbitration), International Association of

Machinists and Aerospace Workers District No. 10 v. Waukesha Engine Division, Dresser Industries, Inc., 17 F.3d 196, 198 (7th Cir. 1994), and RCA Corp. v. Local 241, International Federation of Professional and Technical Engineers, AFL-CIO, 700 F.2d 921, 927 (3d Cir. 1983).

In the instant case, there is "forceful evidence" that the parties intended to arbitrate disability benefit disputes, and there is more than a mere "passing reference" to disability benefits in the CBA. Doc. No. 19, Ex. 18 at 24, 31, 32. Additionally, Plaintiffs have presented unrebutted evidence demonstrating that disability benefits were a reoccurring subject of bargaining between Rayonier management and the craft unions[8] during the collective bargaining process. Moreover, Plaintiffs have located some evidence that Rayonier has acknowledged that the Plan was a part of the CBA:

> [T]he Company reserves the right to revise the Plan provisions, including but not limited to the benefits outlined in this Summary of Benefit Provisions, as may be required to conform the Plan with the requirements of current and future governmental regulations and applicable law, and in conformance with the applicable provisions of the Labor contracts between the Company and the Union, <u>of which this Pension Plan is a part</u>.

---

[8] The craft unions include, among others, Local 473 and the PACE union.

Doc. No. 30 at 86 (emphasis added). See Nabisco Brands, Inc., 833 F.2d at 104-05.

The Court finds that under the terms of the CBA, Rayonier agreed to arbitrate matters of eligibility for disability retirement benefits. Accordingly, Plaintiffs are entitled to summary judgment on Count II. Because the parties agreed to arbitrate Tresher's eligibility for disability benefits, the Court does not reach Count III, which was pled in the alternative.

## CONCLUSION

For the reasons explained above, Rayonier's motion for summary judgment is **GRANTED** on Count I, and **DENIED** on Count II. Local 473's motion for summary judgment is **GRANTED** on Count II. The parties are **DIRECTED** to arbitrate Tresher's eligibility for disability benefits, and the parties' cross-motions for summary judgment on Count III are **DISMISSED** as moot. The action is **STAYED** pending the results of arbitration, and the Clerk shall close the case for statistical purposes. See Doc. No. 16.

**SO ORDERED**, this ___23___ day of June, 2005.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA